## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF RHODE ISLAND

| | |
|---|---|
| NORTH COUNTRY STORE,<br>individually and on behalf of a class of all<br>persons or entities who are similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UNITED NATURAL FOODS, INC.,<br><br>Defendant. | C.A. No. 1:19-cv-00052-WES-LDA<br><br>**CLASS ACTION** |

### UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT
### AND CLASS CERTIFICATION FOR SETTLEMENT

Plaintiff moves this Court to enter an Order certifying a class for purposes of settlement only, and granting final approval to the Settlement Agreement[1] between the Parties and the award of attorneys' fees, reimbursed expenses, and class representative incentive award.  Direct notice was provided pursuant to the plan approved by the Court to almost 40,000 potential class members. The response to settlement from the class has been overwhelmingly positive, **only three class members** choosing to opt out of the settlement and not a single class member objecting to the settlement.  Defendant United Natural Foods, Inc. ("UNFI") does not oppose the relief requested in this motion for settlement purposes only. For the reasons shown below, the settlement is fair, reasonable, and adequate and the settlement class may be properly certified.

### I.    Introduction

Plaintiff is a small business in New York that pursued a putative class action based upon Fuel Surcharges ("the Fees") that UNFI charged Plaintiff and other customers in connection with

---

[1] The Settlement Agreement and its accompanying exhibits are attached as Exhibit A.

the delivery of food products. Plaintiff alleges that UNFI violated the Connecticut Unfair Trade Practices Act (Conn. Gen. Stat. § 42-110a, et seq.) because the Fuel Surcharges were purportedly unrelated to UNFI's actual or increased fuel costs and UNFI made misrepresentations about—and did not disclose—the true nature and purpose of the Fuel Surcharges. Plaintiff also alleged that the Fuel Surcharges breached the form contracts at issue and that UNFI was unjustly enriched. UNFI vigorously contests and denies that it did anything wrong, and contends that its charging and collection of Fees pursuant to its fully disclosed Fuel Surcharge Policy – the contractual terms and conditions of which were agreed to by Plaintiff and the putative class – has always been lawful, proper, customary, and enforceable. UNFI asserts numerous procedural and substantive defenses to Plaintiff's claims, and denies liability to Plaintiff or the putative class, denies that this litigation satisfies the requirements to be tried as a class action under the state and federal rules and requirements for class certification applicable to the claims brought by Plaintiff.

This litigation was pursued aggressively. Disputes over removal jurisdiction were briefed. Documents were searched for, produced, and reviewed by the Parties in assessing the jurisdictional issues in this case. The Parties' counsel also attended an in-person, in-chambers status conference with the Court regarding the jurisdictional issues and the amount in controversy potentially at issue in the case. In sum, through their efforts to date, the Parties are well-versed in the facts of this case and well-equipped to reasonably evaluate the benefits of settlement and the risks and costs of continued litigation.

After lengthy arm's length negotiation, in October of 2019 the Parties agreed to mediate before Hon. James R. Epstein (Ret.), a former judge of more than 15 years' experience with a wealth of experience in settling class actions, and specifically fuel surcharge class actions such as

this. Judge Epstein has successfully resolved many complex actions, including class actions involving similar claims against UNFI's competitors.

The Parties exchanged focused discovery in preparation for the mediation and were well-equipped to evaluate the issues and damages involved. As a result of this mediation, the settlement represented by the Settlement Agreement reflects Judge Epstein's substantial input and communications with the Parties during the lengthy mediation. After agreeing to the relief to the class, the Parties engaged in further negotiations to draft and finalize the settlement agreement and related documents that would give effect to this relief. Ultimately, these negotiations and mediation resulted in the execution of the attached Settlement Agreement, which sets forth the details of the settlement and is submitted to the Court herewith. (*See* Settlement Agreement, Ex. A).

Plaintiff's counsel has extensive experience in cases such as this, and has conducted the discovery and investigation necessary to make an informed evaluation of the proposed settlement. Plaintiff's counsel is of the opinion that the proposed settlement is in the best interest of the class and provides valuable relief in the form of a settlement fund of $1,850,000. The structure, notice, claims procedure, and relief established in this settlement ensure that it is well-within the bounds of what is fair, reasonable and adequate, that notice is correct under Federal Rule of Civil Procedure 23(c)(2), and that the Settlement Class meets all the requirements for certification for purposes of settlement under Federal Rule of Civil Procedure 23(b).

## II.    The Notice Plan Was More Than Adequate And Correctly Executed

The Parties agreed to a comprehensive notice plan that satisfies the requirements of Rule 23 and due process. Rule 23(c)(2)(B) provides that "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2). Rule 23(c)(2)(B) also

provides that notice shall "clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses: (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." *Id*.

The notice plan implemented provided direct notice to class members by sending the Short Form Notice (Exhibit A to the Settlement Agreement) through email and direct mail (for class members where email addresses are not maintained in UNFI's records). The Short Form Notice contains all the information required by Rule 23(c)(2) and is clear and easily understood. A well-respected and experienced national administrator that has successfully overseen the administration of similar class settlements on a nationwide basis, was retained to carry out the notice and administration of this settlement.

Pursuant to this Court's March 31, 2020, Order Preliminarily Approving Settlement and Providing for Notice, on May 15, 2020, the settlement administrator emailed the Short Form Notice to 21,195 valid email addresses, only 593 of which were blocked or bounced, and mailed the Long Firm Notice to 18,159 addresses.  (Exhibit A, Bracy Declaration).[2]  Of the only 3,428 Long Form Notices that were undeliverable per the USPS, the postal service had four forwarding addresses to which the Long Form Notices were forwarded.  (*Id*.) The Notices returned without a forwarding address from the USPS were subject to address verification searches (i.e., "skip traces"). The skip trace efforts resulted in 1,412 updated addresses, to which Notices were re-

---

[2] The Declaration of Danielle Bracy of Angeion Group, the settlement administrator, and its accompanying exhibits are attached as Exhibit B.

mailed. The settlement administrator updated its database with address information obtained from skip traces and from forwarding information provided by the USPS. (*Id*.) As a result of the above-described efforts, a total of 1,416 Notices were either re-mailed or forwarded. (*Id*.)

The settlement administrator established and maintained a class settlement website: https://www.fuelsurchargessettlement.com. The website contained all important settlement documents, including the Settlement Agreement, a long form notice (Exhibit B to the Settlement Agreement) that contains all the information in the short form notice as well as additional information regarding the settlement and class members' rights, allowed class members to submit claims online, and provided no-cost avenues for class members to seek additional information or answers to questions not addressed on the website or in the notices. As of August 3, 2020, the Settlement Website has had 12,371 page views and 5,072 sessions, which represent the number of individual sessions initiated by all users on the website. (Exhibit B, Bracy Declaration)

Additionally, the settlement administrator established a toll-free hotline that utilized an interactive voice response ("IVR") system to provide Class Members with responses to frequently asked questions and inform Class Members of important dates and deadlines pertaining to the Settlement. (*Id*.) Class Members were able to leave voicemail messages for the Settlement Administrator. (*Id*.) The toll-free hotline is accessible 24 hours a day, 7 days a week. (*Id*.) As of August 3, 2020, the toll-free hotline has received 379 calls, totaling 1,295 minutes of call time. (*Id*.)

Plaintiff respectfully submits that notice was detailed, adequate, and timely, and afforded class members more than enough information and opportunity to evaluate the settlement.

## III.     Final Certification Of The Settlement Class Is Appropriate

Plaintiff respectfully seeks, and UNFI does not oppose for settlement purposes only, final certification of the Settlement Class agreed to in the Settlement Agreement. In order for the Parties

to give effect to the settlement, certification for settlement purposes is necessary. *See, e.g.,* Fed. R. Civ. P. 23(e); *Medoff v. CVS Caremark Corp.*, No. 09-CV-554-JNL, 2016 WL 632238, at *1 (D.R.I. Feb. 17, 2016) (class preliminarily approved for settlement purposes); *Trombley v. Bank of Am. Corp.*, No. 08-CV-456-JD, 2013 WL 5153503, at *9 (D.R.I. Sept. 12, 2013) (class "certified for purposes of settlement only"). Certification allows for notice of the terms of the settlement, the right to be heard, the right to opt out, and the time and place of final approval to be provided to the Settlement Class.

Certification of a class is left to the broad discretion of the trial court. *Medoff*, 2016 WL 632238, at *2. Findings by the Court in certifying a class action cannot be disturbed unless there is a showing of abuse of discretion. *Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 37 (1st Cir. 2003) (*citing Califano v. Yamasaki*, 442 U.S. 682, 703 (1979)). In exercising this discretion, courts recognize the "strong judicial policy favoring settlement" and are informed by the "realization that compromise is the essence of settlement." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984); *see also, Ryan v. Roman Catholic Bishop of Providence,* 941 A.2d 174, 187 (R.I. 2008) (discussing "the venerable judicial policy of encouraging settlement"). Courts have long recognized class actions as an essential device to resolve disputes involving similar factual or legal issues. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997). The interests favoring settlement are particularly supportive of class action settlements, given the inherent costs, delays, and risks involved in such complex litigation. *See, e.g*., *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 36 (1st Cir. 2009) ( noting as an "important concern[] facilitating a settlement in a hard-fought, complex class action" and *citing Durrett v. Housing Auth.*, 896 F.2d 600, 604 (1st Cir.1990) as "recognizing a policy encouraging class action settlements")); *In re U.S.*

*Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits").

The elements for class certification for settlement purposes are the same for certification that is opposed, although courts recognize that issues that may arise during a contested certification are not relevant. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems…for the proposal is that there be no trial."). Here, Plaintiff seeks—and UNFI does not oppose—certification of a Settlement Class defined as:

> All customers in the United States that paid Defendant one or more of the Fees at any time within the Class Period.[3]

Plaintiff seeks certification of this class under Rule 23(a) and (b)(3). Rule 23(a) provides that certification is appropriate where:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Rule 23(b)(3) provides that certification is appropriate where, additionally:

> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class

---

[3] The Class Period is November 9, 2012 through and including the date 30 days after the entry of the Preliminary Approval Order. "Fees" means "Fuel Charges" and/or "Fuel Surcharges" assessed by Defendant (including any entity within the definition of "Defendant" as set forth in the Settlement Agreement) pursuant to any policy, credit application, and/or customer distribution agreement, the amount of which fluctuated on a sliding scale regardless of a customer's location based upon changes to the applicable Average On-Highway Diesel Fuel Prices reported by the U.S. Department of Energy, Energy Information Administration, which are at issue or could have been at issue in the operative complaint in the litigation. Excluded from the Settlement Class are: (1) any individual or entity currently in bankruptcy, (2) any individual or entity whose obligations were discharged in bankruptcy, (3) any judicial officer who has presided over the Litigation, and (4) Whole Foods Market, Inc.

action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). Plaintiff will show that each requirement for final certification of the Settlement Class is easily met here for settlement purposes.

## A.    The Settlement Class Is Numerous

There is no set number of plaintiffs that results in joinder being impracticable, but an oft-cited benchmark is that class treatment is appropriate when the class exceeds forty members. *See, e.g.* Newberg on Class Actions § 3:12 (5th ed.). "The fact that the exact number of the class cannot be enumerated does not bar certification. The scope and nature of th[e] litigation and the plaintiffs' class allegations on information and belief" can be sufficient. *Lund v. Affleck*, 388 F. Supp. 137, 139–40 (D.R.I. 1975); *see also Miles v. Am. Online, Inc.*, 202 F.R.D. 297, 302 (M.D. Fla. 2001) ("reasonable and supported estimates" are sufficient). Ultimately, numerosity is established where "common sense assumptions" establish that joinder would be impracticable. *Gordon v. Corp. Receivables*, No. C.A. NO. 09-230S, 2010 WL 376386, at *2 (D.R.I. Jan. 27, 2010) (citations omitted); *see also Kinney v. Metro Glob. Media, Inc.,* No. CIV.A. 99-579 ML, 2002 WL 31015604, at *3 (D.R.I. Aug. 22, 2002) ("numerosity can be assumed where the number of shares traded is so great that common sense dictates the class is very large.") (*quoting Grace v. Perception Technology Corp.*, 128 F.R.D. 165, 167 (D.Mass.1989)).

Here, joinder is impracticable if not impossible, and numerosity is established. UNFI has tens of thousands of customers nationwide, and evaluation of customer data from UNFI's billing and financial system indicates that the Settlement Class has approximately 40,000 members. Class size clearly favors final certification of the Settlement Class.

**B.     Common Questions of Law And Fact Exist**

Federal Rule of Civil Procedure 23(a)(2) requires that there be either questions of law or fact common to the class. This is not a high threshold; not all questions need be common to all class members and a single common question will satisfy this requirement. *See, e.g., United States v. Rhode Island Dep't of Employment Sec.*, 619 F. Supp. 509, 513 (D.R.I. 1985) ("individual differences" do not bar certification); *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 296 (1st Cir. 2000) ("the correct rule[ is] that possible differences in the application of a statute of limitations to individual class members ... does not preclude certification") (internal quotation marks and citations omitted); *Carriuolo v. Gen. Motors Co.,* 2016 WL 2870025, at *3 (11th Cir. May 17, 2016).

Here, the commonality requirement is clearly satisfied for settlement purposes because Plaintiff and each member of the Settlement Class paid the fees at issue under the same fee programs, calculated to similar if not identical methodology, and charged under the same or similar terms. Plaintiff contends that these common practices violated statutory and contractual common law and were deceptive. Thus, common issues of fact and law—including if UNFI's fee programs are unlawful and if the resulting fees were excessive—pervade the Settlement Class.

**C.     Plaintiff's Claims Are Typical**

Typicality focuses on the nature of the claims of the class representative, not the specific facts giving rise to those claims. Fed. R. Civ. P. 23(a)(3). While commonality refers to the shared

characteristics of the class, typicality refers to the class representative's claims in relation to the claims of the class. *Van W. v. Midland Nat. Life Ins. Co.*, 199 F.R.D. 448, 452 (D.R.I. 2001) ("typicality requirement is designed to insure that the claims of the purported class representative are sufficiently similar to the claims of the class members, as a group, that prosecution of the class representative's case will benefit the entire class"). Where a class representative's claims arise "from the same course of conduct and is based on the same legal theory as the claims of the class as a whole . . ." typicality is met. *Id*.

However, typicality does not require identical claims or interests; the question is whether any factual differences are so great as to render the class representative's interests antagonistic to those of the class "such that the interests of the class are placed in significant jeopardy." *Walco Invs., Inc. v. Thenen*, 168 F.R.D.315, 326 (S.D. Fla. 1996). If the claims "are based on the same legal or remedial theory, differing fact situations of the class members do not defeat typicality." *Adamson v. Bowen,* 855 F.2d 668, 676 (10th Cir.1988).

Here, each of Plaintiff's claims is based on the same legal theory and same conduct as those of the Settlement Class. It alleges it was charged the same fees, under the same fee programs and fee terms as the other members of the Settlement Class. Thus, Plaintiff and each member of the Settlement Class allege to have been harmed in the same way: by paying fees which Plaintiff maintains were excessive. The only differences between Plaintiff and Settlement Class members are in the amount, not type, of damages under the common remedial theory of recovery. *See, e.g., United States v. Rhode Island Dep't of Employment Sec.*, 619 F. Supp. 509, 513 (D.R.I. 1985) ("typicality [is] adequately met even without complete identity of damage sustained").

Because Plaintiff and the Settlement Class assert the same legal theories, and seek the same type of relief for the same injury, the Named Plaintiff's interests are materially identical to those of the proposed Settlement Class. Typicality is easily met here.

### D.  Plaintiff Will Adequately Protect The Interests Of The Settlement Class

"The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent . . . . It also involves consideration of the competency and conflicts of class counsel." *Caranci v. Blue Cross & Blue Shield of Rhode Island*, No. C.A. 96-275L, 1999 WL 766974, at *14 (D.R.I. Aug. 19, 1999), *report and recommendation adopted,* 194 F.R.D. 27 (D.R.I. 2000) (*quoting AmChem Products, Inc. v. Windsor,* 521 U.S. 591, 625 (1997)). Here, first, no substantial conflict exists between Plaintiff and the proposed Settlement Class they seek to represent. Plaintiff shares the same interests and seeks the same relief as all absent class members; no class member has an interest in not recovering the damages sought, and, if Plaintiff succeeds, the benefits will be shared. The settlement is a product of arm's length, extensive negotiations between experienced counsel, overseen by a highly regarded mediator. Second, Plaintiff's counsel has extensive experience prosecuting class actions and other complex litigation (including litigation very similar to this case which was successfully resolved on a class basis).[4] Plaintiff and its counsel have significant experience with the practices challenged in this case, have evidenced a more-than-adequate willingness and level of involvement through the diligent prosecution of this litigation, and are well-equipped to evaluate the appropriateness of the

---

[4] Plaintiff's counsel have served as counsel in multiple putative and certified class actions, including: *Grilling the Dream, Inc. et al. v. Sysco Corporation*, Case No. 17-cv-1192-1 (Superior Court of Dougherty County, Georgia); *Hunters Run Apartments, LTD et al. v. WCA Waste Corporation, et al.*, Case No. 1:15-cv-151 (N.D. Fla.); *In & Out Welders, Inc. v. Sunbelt Rentals, Inc.*, Case No. 7:16-cv-04021 (D.S.C.); *Whitton v. Deffenbaugh Disposal Inc.,* Case No. 12-2246-CM (D. Kan.); *Danny Lynn Electric & Plumbing et al. v. Veolia ES Solid Waste Southeast, Inc. et al.*, Case No. 2:09-cv-192-MHT (M.D. Ala.).

settlement. As such, the interests of the Settlement Class are more than adequately represented by

Plaintiff and its counsel in this case and the requirements of Rule 23(a)(4) are satisfied.

### E.    Common Issues Predominate And Superiority Exists

In addition to the four criteria under Rule 23(a), the requirements of 23(b) also must be

satisfied in that common questions of law or fact predominate over individual questions, and in

that a class action is superior to other available methods of adjudication. As explained above, the

claims of the Plaintiff and the Settlement Class members arise from UNFI's alleged fee practices,

and in particular the calculation, assessment, and collection of the fees. The focus of such claims

is on UNFI's contracts and fee practices. Plaintiff alleges that these common fee practices give

rise to the same liability common to Plaintiff and Settlement Class members' claims. Accordingly,

Plaintiff contends the claims of the Settlement Class arise from a similar nucleus of operative facts

and involve questions of law common to all class members.

Moreover, because certification is being sought as part of a settlement, the Court does not

"need to inquire whether the case, if tried, would present intractable management problems...for

the proposal is that there be no trial." *Amchem Products Inc. v. Windsor,* 521 U.S. 591, 620 (1997).

As there is no trial, but rather meaningful, fair, and reasonable relief being provided to all class

members from a common Settlement Fund pursuant to a single distribution methodology, any

individual liability or damages issues that might have occurred at trial are moot. Accordingly, the

common liability questions here are more than sufficient to satisfy the predominance requirement

of Rule 23(b) for certification for settlement purposes of the Settlement Class.

Finally, the proposed resolution by settlement on behalf of a Settlement Class also satisfies

the superiority requirement. Trying the individual claims of thousands of class members in venues

across numerous states would be incredibly costly. Given the costs of pursuing individual actions

and the relatively small amounts at stake for most class members, settlement class members have little interest in individually controlling the prosecution of separate actions; as evidenced by the fact that Plaintiff is aware of no other similar cases that have been filed against UNFI to date. And, importantly, to the extent there are potential Settlement Class members who may want to pursue their own claims regarding these alleged practices, they have the opportunity to opt out of the settlement and to not be bound by the settlement. Finally, the interests of efficiency and the administration of justice for the Parties and for the judicial system are advanced by proceeding as a single case resolved by class-wide resolution.

Accordingly, certification of the Settlement Class is appropriate under Rule 23(b).

**F.  UNFI's Position.**

As set out in the Settlement Agreement and its Answer and Affirmative Defenses to the operative Complaint, UNFI vigorously contests and denies that it did anything wrong, and contends that its charging and collection of Fees pursuant to its fully disclosed Fuel Surcharge Policy – the contractual terms and conditions of which were agreed to by Plaintiff and the putative class – has always been lawful, proper, customary, and enforceable.  UNFI asserts numerous procedural and substantive defenses to Plaintiff's claims, and denies liability to Plaintiff or the putative class, denies that this litigation satisfies the requirements to be tried as a class action under the state and federal rules and requirements for class certification applicable to the claims brought by Plaintiff.  In the absence of the Settlement Agreement, UNFI would continue to vigorously oppose the permissibility of court actions, class certification and any liability for the named Plaintiff's claims on the merits.

**IV.     The Settlement Is Fair And Reasonable, and Final Approval Of The Settlement Is Appropriate**

Final approval of a proposed settlement is the second step in a two-step process necessary to settle a class action. The first step, preliminary approval, was satisfied when this Court granted Plaintiff's Unopposed Motion for Preliminary Approval of the Class Settlement on March 31, 2020. (ECF No. 22).   The Court preliminarily certified the Settlement Class, appointed North Country Store as the representative of the Settlement Class, and appointed Oscar M. Price, IV and Nicholas W. Armstrong, and their firm Price Armstrong, LLC, and Thomas J Enright of Enright Law LLC as Class Counsel for the Settlement Class. This Court further preliminarily approved the Settlement Agreement, finding it the "product of informed, non-collusive negotiations, without obvious deficiencies, which falls within a reasonable range." *Id.* The Court also approved the Plaintiff's proposed notice plan to the Settlement Class, finding that it was "the best notice practicable under the circumstances, and shall constitute due and sufficient notice to the members of the Settlement Class," and set a Final Fairness Hearing governing the settlement of this case on August 10, 2020. *Id.*

Final approval of this settlement is warranted. Courts have broad discretion to approve class action settlements. *Medoff*, 2016 WL 632238, at *2 ("The decision to certify a class is within this court's broad discretion."). The interests favoring settlement are particularly supportive of class action settlements, given the inherent costs, delays, and risks involved in such complex litigation. *See, e.g., In re U.S. Oil and Gas*, 967 F.2d at 493 ("Public policy strongly favors the pretrial settlement of class action lawsuits").

This Court may only finally approve this proposed settlement "after a hearing and on finding that it is fair, reasonable, and adequate." *Baptista v. Mut. of Omaha Ins. Co.,* 859 F. Supp. 2d 236, 240 (D.R.I. 2012), *citing* Fed.R.Civ.P. 23(e)(2); *City P'ship Co. v. Atlantic Acquisition*

*Ltd.,* 100 F.3d 1041, 1043 (1st Cir. 1996) ("A district court can approve a class action settlement only if it is fair, adequate and reasonable."). "When considering a motion for final approval for a class settlement, the Court must conduct a detailed assessment of the settlement terms, the class members' interests, the interests of other third parties that might be affected, and the circumstances of the litigation." *Baptista*, 859 F. Supp. 2d at 240, *citing Duhaime v. John Hancock Mut. Life Ins. Co.,* 183 F.3d 1, 2, 7 (1st Cir.1999).

The proposed settlement in this case bears all the hallmarks of both procedural and substantive fairness, adequacy, and reasonableness as to warrant final approval. "When sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement." *City P'ship Co. v. Atlantic Acquisition Ltd*., 100 F.3d at 1044.

Here, the Parties engaged in a focused discovery process, guided by Plaintiff's counsel's experience in similar matters. The resulting Settlement Agreement was the product of extended, arm's length negotiations and protracted mediation. The Parties participated in a day-long mediation before Hon. James R. Epstein. Judge Epstein has overseen numerous class action mediations and settlements that have been granted court approval, including settlements involving similar allegations related to fuel surcharges. Resolution was only reached after lengthy negotiation and through mediation.

The settlement was reached only after zealous adversarial litigation. The Parties are each represented by experienced counsel who were well-versed in similar fuel surcharge litigation and who, by virtue of the intensive litigation to date and their experience, understand the risks of continued litigation and the benefits of the Settlement Agreement. Plaintiff and all other Settlement Class members participate in the settlement according to a single standard, objective formula which ensures that each class member is returned a fair share of their damages, particularly given

the risks and delay of continued litigation. In short, there is nothing about the proposed settlement that remotely suggests that it might be the product of collusion.

The terms of the Settlement Agreement provide for a $1,850,000 settlement fund from which Settlement Class claimants will receive cash payments. The Parties have a significant dispute as to the amount at issue in this case. UNFI contends that because its fuel expenses exceed its fuel surcharge revenue, there are no damages, regardless of any alleged liability (which UNFI also contests). Plaintiff argues that because UNFI's fuel surcharge program was not designed to recover its increased costs, damages exist regardless of whether UNFI's fuel surcharge revenue exceeds its fuel costs or not. Plaintiff has a variety of damage models it could employ, but its more conservative damage model yields a damages figure of $9,000,000. Because Defendant contends that the actual damages are $0, this settlement is in excess of 33% of the mean of the Parties' respective positions on the value of the potential Class damages. Further, the relief obtained for the class is consistent with the relief obtained for customers of UNFI's primary competitors in class action settlements that obtained court approval. The relief afforded by the settlement is clearly within the range of what is reasonable and fair.

This is particularly true when these immediate and certain benefits are compared to the obstacles that remain to a successful resolution of the litigation. UNFI has always vigorously denied liability—including the existence of any damages at all—and that Plaintiff's claims can be certified in an adversarial context. The Court has not ruled on any dispositive motions, and UNFI remains confident of its chances of success. Were Plaintiff able to survive summary judgment and obtain class certification, including any appellate issues, final resolution of Plaintiff's claims by court trial would likely still take years. Added to the risks and delay of resolution aside from settlement must be the risk that the award by a court or jury is closer to UNFI's damages analysis

than Plaintiff's damages analysis. Continued litigation through trial and appeal would also invariably reduce the ultimate relief to the class through the costs of that litigation, including significant expert fees.

On similar facts, and in a case where no discovery had been served and settlement was reached only six months after filing, this Court has approved a class action settlement. *Baptista*, 859 F. Supp. 2d at 241. In *Baptista*, this Court observed that the settlement was the product of an arms' length mediation, that class counsel had experience in similar cases, and that the settlement approximated 40% of the asserted damages. *Id.*

Significantly, the Settlement Class itself is pleased with the result.  Not only are there no objectors to the Settlement, there are exceedingly few opt-outs.  The deadline for class members to opt-out of the settlement was July 20, 2020.  As of July 30, 2020, the settlement administrator has received only 3 opt outs.  (Exhibit B, Bracy Declaration).

The proposed settlement is the product of hard-fought negotiation and represents valuable relief to the Settlement Class. Plaintiff respectfully submits that final approval is appropriate.

## V.    The Proposed Award Of Fees, Expenses, And Class Representative Incentive Award Is Reasonable And Appropriate.

Plaintiff and their counsel have achieved a settlement that provides meaningful relief for thousands of small businesses and consumers across the country. But for the actions of Class Counsel in investigating Defendant's conduct, the class members here would not only have received nothing at all, but would likely remain unaware of the alleged wrongdoing or the potential claims.

In light of the relief obtained for the class, Class Counsel seeks—and UNFI does not oppose— (in keeping with prevailing fee awards for class settlement), an award of up to 33 and 1/3% of the Settlement Fund (i.e. $616,666.66). Additionally, Class Counsel requests, and

Defendants do not oppose, reimbursement of $30,000 in litigation expenses to be paid out of the Settlement Fund. Importantly, the requested attorneys' fees and expenses were posted on the settlement website of which all class members were notified and were available for class member review. No class member has objected to these awards or otherwise raised any concerns about these amounts. (*Id.*)

As shown below, these requests are entirely reasonable, ordinary, and should be approved as part of the overall settlement of these claims given (1) the meaningful economic benefit obtained for the class, (2) the expertise and experience provided by Class Counsel, (3) the high level of commitment shown by the class representatives in pursuing these claims, and (4) the risky nature of this complex litigation, which saw Class Counsel advance all expenses and work on a wholly contingent basis.

### A. Courts Routinely Approve Negotiated Fee Awards In Similar Circumstances.

Following the resolution of all material terms of the class relief, the Parties negotiated the fee award and agreed to the amount which is now sought by Plaintiff and not opposed by UNFI (for settlement purposes only). Recognizing the adversarial nature of class litigation and value of the opinions of experienced counsel, courts encourage such negotiated fee agreements. *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 720 (5th Cir. 1974); *rev'd on other grounds* ("In cases of this kind, we encourage counsel on both sides to utilize their best efforts to understandingly, sympathetically, and professionally arrive at a settlement as to attorney's fees."); *see also Williams v. MGM-Pathe Communications Co.*, 129 F. 3d 1026, 1027 (9th Cir. 1997) ("parties to a class action properly may negotiate not only the settlement of the action itself, but also the payment of attorneys' fees").

The fee arrangement for which Plaintiff seek approval followed this well-accepted path. *See also, e.g., Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("Ideally, of course, litigants will settle the amount for a fee"); *M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 829 (D. Mass. 1987) ("The authorities encourage parties situated as those herein to agree as to the amount of the counsel fees to be paid.  Whether a defendant is required by statute or agrees as part of the settlement of a class action to pay the plaintiffs' attorneys' fees, ideally the parties will settle the amount of the fee between themselves.").

**B.  The Preferred Method Of Calculating Attorneys' Fees Is As A Percentage Of The Overall Class Benefit And The Proposed Award Here Is Appropriate.**

It is well-established that, where litigation has resulted in a benefit being conferred upon an identifiable class, class counsel is entitled to an award of attorneys' fees that is calculated as a percentage of that benefit.  "In class action cases, attorney fees may be awarded from a common fund created for the benefit of the class. *Baptista*., 859 F. Supp. 2d at 242 (D.R.I. 2012), *citing* Fed.R.Civ.P. 23(h) ("In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement"); *see also United States v. 8.0 Acres of Land*, 197 F.3d 24, 33 (1st Cir. 1999).

The appropriateness of the percentage of fund method in calculating a fee award in common fund cases has been recognized by the United States Supreme Court.  *In re Lupron Mktg. & Sales Practices Litig.,* 2005 WL 2006833, at *3 (D. Mass. Aug. 17, 2005) (quoting *Blum v. Stenson*, 465 U.S. 886, 900 n. 16 ("[U]nder the common fund doctrine, ... a reasonable fee is based on a percentage of the fund bestowed on the class.").)

The "percentage of fund" method is preferred in this Circuit and others.  The Court of Appeals in *In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litigation* noted the "distinct advantages that the POF method can bring to bear"—it is less burdensome to

administer, it reduces the possibility of collateral disputes, it enhances efficiency throughout the litigation, it is less taxing on judicial resources, and it better approximates the workings of the marketplace. *In re Thirteen Appeals*, 56 F.3d 295, 307 (1st Cir. 1995). "At least nine other Circuits—the Second, Third, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh, and the District of Columbia—have approved the use of the POF method in common fund cases." *In re Lupron*, 2005 WL 2006833, at *3; *citing* Manual For Complex Litigation § 14.121 (Fourth 2004) ("The vast majority of courts of appeals now permit or direct district courts to use the percentage-fee method in common fund cases."). And while courts in this Circuit will sometimes employ a "lodestar cross-check," it is generally accepted that a lodestar cross-check is important only in cases where the settlement fund is over $100 million, which is clearly not the case here. *See In re Loestrin 24 Fe Antitrust Litig*., 1:13-MD-2472-WES-PAS, 2020 WL 4035125, at *5 (D.R.I. July 17, 2020)

Class Counsel's unopposed request for an award of one-third of the total benefit conferred is well-within the range routinely accepted by courts. Courts in this Circuit regularly award a one third attorneys' fee and have awarded large percentage of the fund attorney's fees even when it results in eight figure attorney's fee awards. *See In re Solodyn Antitrust Litig*., CV114MD2503DJC, 2018 WL 7075881, at *2 (D. Mass. July 18, 2018)("Upon consideration of Class Counsel's petition for fees, [class counsel] are hereby awarded attorneys' fees totaling 33 1/3% of the [settlement funds]"); *see also See In re Lupron*, 2005 WL 2006833, at *5 (awarding $23,750,000 in attorney's fees)[5].

---

[5] Importantly, this is a non-reversionary settlement, meaning that all of the settlement fund will be extinguished. The cases in the Circuit in which Courts have rejected a one third percentage of the fund fee request are generally reversionary settlements in which the practical effect of a one third attorney's fee is to award the attorney's substantially more than the class itself receives. *See, e.g., Trombley v. Bank of Am. Corp*., 08-CV-456-JD, 2012 WL 1599041, at *3 (D.R.I. May 4, 2012)(rejecting an application for a one third attorney's fee award because in the claims made, reversionary settlement, only $110,548 of the $5,000,000 fund was to be paid to the class and the

Courts in this Circuit have not adopted a precise set of criteria for consideration of an attorney's fee award, but they commonly consider (1) the size of the fund and the number of persons benefitted; (2) the skill, experience, and efficiency of the attorneys involved; (3) the complexity and duration of the litigation; (4) the risks of the litigation; (5) the amount of time devoted to the case by counsel; (6) awards in similar cases; and (7) public policy considerations, if any. *In re Lupron Mktg. and Sales Practices Litig.*, 2005 WL 2006833 at *3 (D. Mass. 2005). Of these factors, the "most critical factor is the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436, (1983). A thorough consideration of these factors supports Class Counsel's fee request.

(1) The size of the fund and number of persons benefitted. These factors strongly support the fee award. UNFI has tens of thousands of customers nationwide, and evaluation of customer data from UNFI's billing and financial system indicates that the Settlement Class has approximately 40,000 members. Class Counsel obtained a settlement fund of $1,850,000, providing meaningful relief to the class members in proportion to the excess surcharges paid by each class member. This relief is substantial, compromising in excess of 33% of the mean of the Parties' respective positions on the value of the potential Class damages.

(2) The skill, experience, and efficiency of the attorneys involved. The attorneys in this case have a highly specialized background in similar cases, and obtained meaningful relief to the Class following a period of zealous litigation of their claims. Class Counsel

---

one third attorney's fee would therefore "dwarf[] the recovery to be paid to the class members…." *Id*.

This is not the case here. UNFI will pay to the class claimants the entire fund other than the incentive awards, administration expenses, and attorney's fees and expenses.

narrowed the issues in dispute and brought the case to a fair conclusion without unnecessary motion practice or excessive discovery.

(3) The complexity and duration of the litigation. The questions presented by this case were difficult and a high level of specialized skill was necessary to perform the services required by this case and obtain the settlement. The complexity of the issues in this nationwide case against a well-represented and funded defendant required attorneys with substantial experience in class actions and other complex litigation. Plaintiff respectfully suggests that their counsel possess the specialized experience, reputation and ability necessary to litigate this nature of case and obtain the result offered by this settlement.

(4) The risks of the litigation. UNFI continues to deny liability —including the existence of any damages at all—and that Plaintiff's claims can be certified in an adversarial context. The Court has not ruled on any dispositive motions, and UNFI remains confident of its chances of success. The settlement was reached prior to rulings on summary judgment and class certification, meaning that any final resolution of Plaintiff's claims by trial would likely still take years. The risks, delay, and expenses of potential litigation, including the uncertainty of an outcome in line with Plaintiff's damages analysis, support the Fee award.

(5) The amount of time devoted to the case by counsel. Plaintiff was represented by two law firms, who developed the theory of liability, investigated this Defendant, consulted with an accounting expert, prosecuted the case in this Court, and prepared for and resolved this case through a mediation in Chicago, Illinois.

(6) Awards in similar cases. The relief obtained for the class is consistent with the relief obtained by Class Counsel for customers of UNFI's primary competitors in class action settlements that obtained court approval.

(7) Public policy considerations. As the court in *Lupron* observed, there is a significant societal interest in obtaining redress for consumers whose harms could not, given the cost of litigation, be pursued on an individual basis. 2005 WL 2006833, at *6. Here, as in *Lupron*, the public interest is also served by the approval of settlement requiring the defendant to disgorge of the proceeds of deceptive marketplace behavior.

Plaintiff respectfully submits that the proposed attorneys' fees—unopposed by UNFI (for purposes of settlement only) and reached as the result of arms-length negotiations only after the class settlement had been negotiated—are reasonable, fair, and in keeping with First Circuit precedent, and with approved awards in similar cases. The reaction of the class to this settlement has been overwhelmingly positive (and more notably, has generated almost no negative reaction), and no class member has objected to Plaintiff's fee request. (Exhibit B, Bracy Declaration).

## C.    Reimbursement Of Necessary Expenses Incurred Is Appropriate.

In addition to the above request for attorneys' fees, Plaintiff respectfully requests (and Defendants do not oppose) reimbursement of litigation expenses of $30,000, to be paid out of the Settlement Fund. The reimbursement of expenses advanced by plaintiffs is customary and appropriate. *See, e.g., In re Fidelity/Micron Sec. Litig.,* 167 F.3d at 735, 736 (1st Cir. 1999); *Baptista*, 859 F. Supp. 2d at 242. Here, the amount sought represents actual expenses incurred by Plaintiff's attorneys during the litigation. Given the scope this nationwide litigation, and the investigation that lead to it, Plaintiff suggests that this amount is reasonable and reflects continual

efforts by counsel to limit expenses. UNFI does not oppose this request for purposes of settlement only.

**D.    The Class Representative Should Receive An Incentive Award.**

Plaintiff seeks an award of a class representative incentive award of $15,000 for the named Plaintiff. "Incentive awards serve an important function in promoting class action settlements, particularly where, as here, the named plaintiffs participated actively in the litigation." *In re Lupron Mktg. & Sales Practices Litig.*, 2005 WL 2006833, at *7 (D. Mass. Aug. 17, 2005). Courts recognize the importance to "compensate lead plaintiffs for their work and the benefit they have conveyed on the rest of the class." *Tussey v. ABB, Inc.*, 850 F.3d 951, 962 (8th Cir. 2017).

Notably, the class representative incentive award sought here is well-within the range of appropriate awards. *See Lupron*, *id.* (approving incentive awards of up to $25,000); *see also In re Dun & Bradstreet Credit Serv. Customer Litig.*, 130 F.R.D. 366, 373-74 (S.D. Ohio 1990) (approving incentive awards in the amounts of $35,000 and $55,000 to five class representatives); *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250-51 (S.D. Ohio 1991) (approving $50,000 to each of the six class representatives from a common fund); In re Revco Sec. Litig., No. 851, 1992 WL 118800, at *7 (N.D. Ohio May 6, 1992) (awarding $200,000 to the class representative and noting that "[n]umerous courts, recognizing that serving as a class representative involves a substantial time commitment to the litigation, have permitted such award").

Plaintiff respectfully submits that the proposed class representative incentive award (which is not opposed by UNFI (for settlement purposes only) or any class member) is reasonable and appropriate.

## **CONCLUSION**

For the reasons set out above, Plaintiff respectfully requests that the Court grant final approval of the settlement and enter an Order of Final Judgment and Dismissal in accordance with the Settlement Agreement.

NORTH COUNTRY STORE

By Its Attorneys

ENRIGHT LAW LLC

*/s/ Thomas J. Enright*
Thomas J. Enright (#7356)
696 Reservoir Avenue
Cranston, RI 02910
(401) 526-2620
tom@enrightlawoffice.com

PRICE ARMSTRONG, LLC

*/s/ Oscar M. Price, IV*
Oscar M. Price, IV (*pro hac vice*)
2226 1st Avenue South
Suite 105
Birmingham, AL 35233
(205) 208-9504
oscar@pricearmstrong.com

DATED: August 3, 2020

### CERTIFICATE OF SERVICE

I hereby certify that on this third day of August, 2020, I filed the foregoing via the CM/ECF system. Accordingly, a true and accurate copy of the foregoing has been served upon all counsel of record in this case.

*/s/ Thomas J. Enright*
Thomas J. Enright (#7356)
696 Reservoir Avenue
Cranston, RI 02910
(401) 526-2620
tom@enrightlawoffice.com